IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN L.,[1]

      Plaintiff,

      v.                                                                                  Civ. No. 24-464 SCY

MICHELLE KING,
Acting Commissioner of
Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff argues that the Commissioner committed error when denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts that the ALJ failed to consider medical evidence of Plaintiff's disability related to pain in his hands and neck. The Court agrees that the ALJ did not discuss this evidence, and thus did not explain why he rejected it. The Court also agrees that objective medical evidence supporting Plaintiff's complaints of pain is significantly probative to a finding on whether Plaintiff can return to a job that requires a certain amount of using his hands and turning his neck. As a result, the Court GRANTS Plaintiff's motion to remand and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 6, 7, 8. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves

**APPLICABLE LAW**

    A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past

---

discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>   relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)   If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

   B.   Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at

800-01. In making these determinations, the court neither reweighs the evidence nor substitutes its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

A.     Background

Plaintiff contends the ALJ erred in the consideration of evidence of pain related to his neck and hands. To begin, Plaintiff argues the ALJ erred in finding persuasive the "stale" opinions of the state agency reviewing physicians. Doc. 15 at 8. In support, he points out that the relevant "rheumatology records and diagnosis of inflammatory polyarthritis were not submitted into the record until well after the" state agency consultants reviewed his application. *Id.* "Their review of the medical evidence includes no mention of inflammatory polyarthropathy." *Id.* As a result, Plaintiff argues, the ALJ should not have relied on their opinions to conclude that Plaintiff had no limitations in handling or turning his neck. *Id.*; *see* AR 30 ("These [state agency consultant] opinions were based on a review of the record. Some manipulative limitations though were warranted due to [Plaintiff's] radicular symptoms going into his upper extremities. Overall, these opinions were generally consistent with the physical examination findings and treatment records. Thus, these opinions were persuasive.").

Plaintiff notes the Tenth Circuit has criticized reliance on "patently stale" opinions of state-agency psychologists as "troubling." *Id.* (citing *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012)). Even so, Plaintiff acknowledges that although "[d]istrict courts within the circuit have agreed with that sentiment, [they] have been reluctant to remand on such a basis where an ALJ meaningfully confronts the objective evidence which the reviewing doctors they rely upon were not able to consider and where a claimant 'fails to cite any evidence suggesting his mental impairments had worsened' since those psychologists reviewed the record." *Id.* at 8-9 (collecting cases).

In an effort to distinguish his situation from those addressed in such district court cases, Plaintiff argues his case is more like *Reeder v. Colvin*, where the district court reversed,

5

reasoning that the ALJ not only relied on a stale state-agency opinion, but also that there were new mental health diagnoses "not even mentioned by the ALJ in his decision." No. 13cv1201, 2014 WL 4538060, at *4, 6 (D. Kan. Sept. 11, 2014); *see also Dawn R v. Kijakazi*, No. 22-478 SCY, 2023 WL 5176274 (D.N.M. Aug. 11, 2023) (finding the ALJ should have discussed the more recent evidence because it contradicted some of the ALJ's assertions about the record). Because Plaintiff acknowledges the ALJ can cure a reliance on stale state-agency opinions by the ALJ's own proper consideration of all the evidence, and because the Commissioner does not object to this framework, *see* Doc. 18 at 17, the Court turns to the part of Plaintiff's argument that involves the ALJ's duty to consider all material evidence, whether the state agency physicians considered it or not.

"The regulations require the ALJ to consider all evidence in the case record when he makes a determination or decision whether claimant is disabled." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(3)) (internal quotation marks and alterations omitted). An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

However, although "[t]he record must demonstrate that the ALJ *considered* all of the evidence," he "is not required to *discuss* every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (emphasis added). To meet his burden in this Court, Plaintiff must not only "point[] to evidence that she claims the ALJ failed to discuss," but also "say why it was significantly probative." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014). The Court will not do so for a claimant. *Id.* Here, Plaintiff satisfies his initial burden by pointing to a variety of evidence he contends the ALJ should have discussed. Doc. 15 at 10-13.

Plaintiff highlights medical records reflecting that "Plaintiff often presented to treating providers in both mild and moderate 'distress' secondary to neck pain," Doc. 15 at 11 (citing AR 537, 545, 555, 558, 562, 615, and 759); "Plaintiff exhibited 'pain with motion' of the neck and trigger points of the cervical spine on physical examination during rheumatology visits consistently," *id.* (citing 537, 555, 558, 562, 615, 759); and rheumatology records that "demonstrated 'burning pain' in Plaintiff's bilateral fingers," *id.* at 12 (citing AR 647, 692); "swelling," *id.* (citing AR 648, 654); and "carpometacarpal squaring," *id.* (citing AR at 648, 655), "all of which continued despite multiple steroid injections to the bilateral hands," *id.* (citing AR 648, 655).

In the RFC, the ALJ concluded that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs, and climbing ladders, ropes, or scaffolds; frequent fine and gross handling bilaterally.

AR 24. The ALJ then found that a person with this RFC could perform Plaintiff's past relevant work as a fire inspector/general clerk. AR 31.

Plaintiff contends that the vocational expert testified that a person could not perform work as a fire inspector if a limitation existed in the ability to either (1) frequently (for six hours of a workday) turn the neck from side to side or up and down, or (2) occasionally (for two hours of a workday) handle objects. Doc. 15 at 13; AR at 78-79, 83. Thus, Plaintiff argues that medical evidence that Plaintiff is more limited in either of these areas than the RFC describes is significantly probative because it would result in a different outcome. *Id.* at 13-14.

For her part, the Commissioner emphasizes that the ALJ does not need to *discuss* every piece of evidence in the record, and that the ALJ clearly *considered* these records, because he cited almost all of them. Doc. 18 at 12-14. And, "the one record not cited was a visit in April 2023, well over a year outside the relevant period at issue here." *Id.* at 18.

The Court agrees with the Commissioner that the ALJ has no duty to discuss every piece of medical evidence. But to satisfy his duty, the ALJ must meaningfully consider all the evidence and, in particular, must discuss the "significantly probative" evidence in favor of disability which the ALJ rejects. *Clifton*, 79 F.3d at 1010. To analyze whether the ALJ did so here, the Court will summarize and examine, in chronological order, the evidence Plaintiff contends the ALJ should have discussed, but did not.[4]

B.  Summary of evidence pertinent to the appeal

*March 5, 2020*. Plaintiff saw Dr. Ortiz with complaints of "arthralgias/joint pain; mid back and neck areas." AR 561. Dr. Ortiz performed a physical examination and documented findings of "Neck: tender and pain with motion." AR 562. As the Commissioner emphasizes, the ALJ discussed this encounter: "In March 2020, [Plaintiff] reported having pain on the right side

---

[4] Plaintiff alleged disability beginning September 18, 2019, AR 18, and his date last insured was December 31, 2022, AR 20. Thus, the Court begins its discussion with a focus on this time frame.

8

of his neck, especially when turning to his right. He also sometimes had discomfort lifting items heavier than a gallon of water. He also had middle back pain that radiated to the side of his chest. He was given a trigger point injection in his neck." AR 27. The Court agrees with the Commissioner that the ALJ acknowledged Plaintiff's complaints of pain. The ALJ did not, however, discuss the physical examinations Dr. Ortiz performed that support Plaintiff's subjective complaints of pain.

*May 26 and 28, 2020*. Plaintiff saw Dr. Ortiz with complaints of neck pain. Similarly to the March encounter, Dr. Ortiz noted these complaints and performed a physical examination. The examination noted mild distress, neck tenderness, "neck pain with motion," and "pain in the T12 level at midline and in mid cervical spine area on palpation."[5] AR 558; *see also* AR 615 (neck tender, pain with motion). The ALJ did not mention these May visits, and so did not discuss the physical examination evidence.

*August 7, 2020*. Dr. Ortiz again performed a physical examination noting "pain with motion." AR 555. The ALJ acknowledged Plaintiff's August 2020 complaints of pain, but again did not discuss the physical examination supporting those complaints. AR 27.

*October 28, 2020.* Plaintiff saw Dr. Ortiz for joint pain. AR 545. Plaintiff stated that "he was recently given a Kenalog injection and his symptoms got much better but the pain is back." *Id.* Dr. Ortiz's physical exam noted "moderate distress," "pain in his hands and neck," and "neck pain with motion." *Id.*[6] Dr. Ortiz started Plaintiff on arthritis medication "because of continued

---

[5] Plaintiff explains this cervical spine finding relates to trigger points: "Myofascial trigger points, or pressure points, are tight, contracted knots in muscle and fascial tissue surrounding muscles. They cause myofascial pain syndrome, which is a very common cause of pain and reduced range of motion in various parts of the body, including the neck." Doc. 15 at 11 n.3 (citing emergeortho.com).

[6] The Commissioner argues that although this examination "included complaints of hand pain," "no functional loss was noted." Doc. 18 at 13. The physical examination did not test for

9

pain in the hands and generalized areas of the joints." *Id.* Dr. Ortiz commented that "all of [Plaintiff's] labs [are] essentially within normal [but] his pain is real" and he ordered medication "pending referral to rheumatology." *Id.*

At step two, the ALJ wrote: "In October 2020, [Plaintiff] reported having no significant pain from the arthritis in his hands." AR 19 (citing AR 545). It is true that the cited record does say: "Patient He has been having no significant pain from arthritis in both his hands And his neck . . . ." AR 545 [sic]. But the negative in this sentence is obviously a typographical error. The same page of the record goes on to discuss "x-rays of his hands to evaluate his complaints of pain in both hands," other appropriate lab tests, further reports of joint pain in "both shoulders hands and knees," and—in bold typeface—a physical examination reflecting "pain in hands and neck" and a "tender" neck and neck "pain with motion." *Id.* Read in its entirety, this note supports Plaintiff's assertions of pain, rather than undermines them.

At step four, the ALJ wrote: "In October 2020, [Plaintiff] described having pain all over his body. He reported pain in his knees and shoulders. Later that month, he indicated a recent Kenalog injection in his neck had significant[ly] improved his symptoms." AR 27 (citations omitted). That is, the ALJ acknowledged Plaintiff's complaints of pain, but did not discuss the physical examination. Moreover, the ALJ focused on the comment that injections helped his pain, without acknowledging that the same sentence indicates the amount of time the injections helped was limited because the pain had already returned.

*January 19, 2021.* Plaintiff saw Dr. Ortiz with complaints of neck pain. AR 537. Dr. Ortiz noted these complaints and also noted mild distress, tenderness in the neck, and "neck pain

---

functional loss, however, and so the absence of a finding of functional loss does not undermine the probative value of this evidence.

10

with motion" in the results of his physical examination. *Id.* The ALJ discussed this encounter but discussed neither Plaintiff's complaints of neck pain nor Dr. Ortiz's assessment of them. AR 27 ("In January 2021, he got a medication refill. He indicated his back pain responded to medication, but was still present. He described pain in his shoulders and knees.").

*August 4, 2021*. Plaintiff saw NP Barrett complaining of joint pain that began 2-3 years ago, stating that relief from injections only lasts two weeks, and describing his finger pain as "burning." AR 692. NP Barrett noted full range of motion in his hands and no swelling, and performed a shoulder injection. *Id.* During his step-four narrative, the ALJ did not discuss this encounter. However, the ALJ acknowledged it earlier, at step two when discussing whether hand osteoarthritis was a severe impairment. AR 21 ("On examination, [Plaintiff] had full range of motion in his hands and wrists with some swelling," citing this record).

*November 15, 2022*. Plaintiff saw Dr. Norton with the same complaints: joint pain that began 2-3 years ago, relief from injections that lasts only two weeks, "burning" finger pain, and thumb squaring and swelling that interfered with his ability to use his hands as a mechanic. AR 654. Dr. Norton's physical examination registered "swelling" and "c[arpo]m[eta]c[arpal] squaring." AR 655. AR 655. The ALJ discussed this encounter briefly. AR 28 ("In November 2022, [Plaintiff] described being a mechanic and that his symptoms were interfering with his ability to be a mechanic."); *see also* AR 21 (step-two discussion stating that "On examination, he had full range of motion in his hands and wrists with some swelling," citing this record).

*After date last insured.* Plaintiff's date last insured was December 31, 2022. AR 20. Plaintiff contends the ALJ should have discussed two visits after that date. The Commissioner argues that records after Plaintiff's date last insured are not relevant. *Cf.* Doc. 18 at 12-13. The Commissioner's assertion, however, is inconsistent with Tenth Circuit precedent. *Baca v. Dep't*

*of Health & Hum. Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." (quotation omitted)).

The records Plaintiff cites (in February and April 2023) reflect that Plaintiff's complaints of pain began "2-3 years ago" and also reflect findings similar to earlier encounters (Plaintiff's description of his finger pain as "burning" and physical examinations registering "pain with motion," limited range of motion, "swelling," and carpometacarpal squaring). AR 647-48, 759. These records provide support for Plaintiff's contentions regarding the relevant period, in that they reflect that he continued to complain of the same symptoms which started within the relevant period and that the physical examinations continued to reflect the same results and that the records did not document improvement with treatment.

Here, the ALJ did discuss the medical records after the date last insured, stating: "After the date last insured, [Plaintiff] still had some pain complaints. On examination since the alleged onset date, he had some tenderness in his neck, back, and joints. At times, he had reduced range of motion in his shoulders. Rarely, he had reduced range of motion in his neck." AR 28 (citations omitted); *see also* AR 21 (step-two discussion stating that "On examination, he had full range of motion in his hands and wrists with some swelling," citing some of these records).

C.     ALJ's conclusions

In relevant part, the ALJ drew two conclusions from his review of the evidence. With respect to Plaintiff's hand functioning, he wrote at step two[7]:

> The claimant had some osteoarthritis in his hands. In October 2020, he reported having no significant pain from the arthritis in his hands. (Exhibit 5F, page 11). In March 2021, he described having pain in his hands. (Exhibit 7F, pages 6-7). In May 2021, his right thumb was bothering him somewhat. In March 2022, he reported having pain in his thumbs. He felt trouble with grasping and grip strength. He thought a recent change in medication was starting to help and overall his arthritis in general was improved if he stayed more active. In August 2022, he had pain in his thumbs, CMC, and first MCPs, but did feel an improvement with his medications. In November 2022, he had some pain in his bilateral CMC joints with swelling in his right. He described how this pain was "interfering with his ability to use his hands as a mechanic". After the date last insured, in February 2023, he had some discomfort in his thumbs and wanted injections. (Exhibit 13F, pages 7-8).
>
> On examination, he had full range of motion in his hands and wrists with some swelling. (Exhibit 13F, pages 8-9, 16, 25, 32-33, 40, 54, 59). Overall, the claimant had minimal findings related to his arthritis. He did have his numbness that was attributed to his radicular symptoms that would result in manipulative limitations.

AR 20-21.

As outlined above, this discussion is incorrect in a couple of respects. In October 2020, Plaintiff did report significant pain in both hands, that relief from injections was limited in duration, and that the doctor wrote more treatment was necessary for the pain. In November 2022, the records again reflect that relief from injections only lasted two weeks, and they show that the provider performed a physical examination and documented carpometacarpal squaring.

---

[7] Plaintiff notes this discussion took place at step two, Doc. 15 at 9, but does not specifically develop an argument, with citation to authority, that it was error to rely on the finding of non-severity at step two and then fail to discuss or consider it at step four. The Court therefore does not reverse on the basis of this error. However, because the Court reverses for other reasons, the Court instructs the ALJ on remand to consider and discuss all impairments, severe and non-severe, during the narrative discussion at step four. *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013); 20 C.F.R. § 404.1545(a)(2).

The ALJ's discussion of the objective evidence does not reflect these points that support Plaintiff's subjective complaints of pain.

> With respect to neck functioning, the ALJ wrote at step four:
>
> The claimant's representative cited to a single examination in December 2022 where the claimant had reduced range of motion in his neck to assert that the claimant had limitations involving the frequency of turning his head. The claimant had seen a new provider on that visit for the first and only time. (Exhibit 11D; Hearing testimony; Exhibit 15F, page 11). There was one other treatment record in 2022 where the claimant was noted to have reduced range of motion in his neck. (Exhibit 17F, page 30). However, generally, this finding was not documented in treatment record, with him regularly having normal range of motion in his neck. In fact, the very day before this December 2022 examination where he had reduced range of motion in his neck, a different treatment provider noted the claimant had full range of motion in his neck. (Exhibit 17F, pages 25). The minimal times this was reported did not support the limitations proposed by the claimant's representative.

Doc. 15 at 10 (quoting AR 30). As outlined above, this discussion acknowledged only the evidence supporting the RFC such as the range of motion tests, and did not consider the repeated physical examination findings of neck pain with motion, tenderness on motion, pain at trigger points, and the reports that relief from injections only lasted a couple weeks.

The ALJ included a more robust acknowledgement of the physical examination results in the context of records after the date last insured. AR 28 ("After the date last insured, [Plaintiff] still had some pain complaints. On examination since the alleged onset date, he had some tenderness in his neck, back, and joints. At times, he had reduced range of motion in his shoulders. Rarely, he had reduced range of motion in his neck." (citations omitted)). But the ALJ did not explain why he rejected the evidence of pain and tenderness on motion, and evidence that those symptoms had been ongoing for two to three years.

As the Commissioner emphasizes, the ALJ did consider Plaintiff's complaints of pain in his hands and neck. But the ALJ did not acknowledge that these complaints were supported by physical examination findings. Instead, the ALJ seemed to assume the only objective evidence

consisted of a small number of range-of-motion tests. AR 20, 30. As a result, the Court cannot conclude that the ALJ considered the other objective evidence that supported Plaintiff's complaints of pain. Further, the ALJ cited evidence that treatment helped Plaintiff's symptoms without acknowledging that, in the very same instance, the duration of the relief was reportedly very limited. Thus, the ALJ's consideration of the medical records omitted significantly probative evidence supporting Plaintiff's claims of disability. The Court reverses for the ALJ to consider this evidence on remand.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand, Doc. 15, is **GRANTED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**